Yes, Judge. The next matter is number 231259, United States v. Naturally Samari-Rodriguez-Bermudez. At this time, would counsel for the appellant please introduce himself on the record to begin. On behalf of the United States v. Rodriguez-Bermudez, I reserve one minute for rebuttal. Okay, Jermaine, please proceed. I assume we're very familiar with the issue that we've seen for the last two hours. Yes, Your Honor. The district court advocated its most basic duty at sentence of determining the correct guideline, which as reflected in the CSR, by a minimal participant adjustment for Mr. Rodriguez. The district court stated during sentencing that the probation officer adjusted the guideline computation based on Mr. Rodriguez being a minimal participant and, quote, the pre-sentence investigation report reflects the component of Mr. Rodriguez's offenses by considering their nature and circumstances, end quote. Well, the issue in this case is different than, I suppose, the other one. The judge is basically saying, well, I'm not reaching a firm conclusion. I will assume that the minimal role applies, and then I will choose to sentence you at the top of what that rate would have been. Now, I understand in the end he said, I don't need to decide this, but I think as I read it, that's what his intentions were, and I'm sure we're going to hear from the government, okay, even though he didn't say it, he applied it in that sort of informal way, and then imposed a sentence, and that that's good enough. And so, why not? Sure. Well, in choosing this 46-month sentence, as the court is indicating, it plainly states before deciding on that, I'm not going to decide the minimal role. I understand that the court here could imply that it was applied based on all the other pronouncements at sentencing and post-sentencing, for example, the statement of reasons. And basically, the guilt on sentence is within the minimal role sentence is applied at the upper end, correct? It would be at the upper end, yes, Your Honor. However, if you look at the sentencing transcript, which is page 107 of this amendment of appendix, the district court states, other things that I have considered, other than the fact that she may have been a minimal participant, is that Ms. Rodriguez is a first-time offender, she remained compliant during pre-trial release, she's currently studying and gainfully employed in her own business, and that the sentence was continued because Ms. Rodriguez suffered hospitalization in a psychiatric hospital due to an anxiety attack and attempting to harm herself. All of these factors are mitigating factors, which would not follow a higher end of the guideline sentence. So what you're saying is if the judge had actually found a minimal participant, her guideline range would have been 37 to 46, then the only explanation on this record for choosing a high end of that are things that wouldn't support a high end, they would support either a low end or even a variance, which are all mitigators, so that's really the error in this case? Yes, Your Honor, and also the fact that both the defense and the government advocated for downward variance from what each party considered to be the applicable guideline range, and the government never stated during the sentence that it would have changed, that the recommendation would have stayed the same. Okay, so the judge is not bound by those downward variance requests. He can – and, you know, the issue I see, though, as the judge has highlighted, the sentencing range is correct, so you're telling us that there wasn't really an abuse of discretion for him to go for the high end. You're not going to get a lower sentencing range, am I correct? Well, Your Honor, the – Or are you saying that he should have varied downwards even more than that range? Yes, Your Honor, and for example, I heard a case on Stavarides from the First Circuit where the court indicated that the failure to decide between two guideline ranges, although it was considered a significant procedural error, was determined harmless. In that case, the judge did explain reasons outside of the debate in that case I think was a criminal history issue. Outside of that issue, other reasons why the court would still impose what in that case was an upward variance from both guideline ranges that were proposed by the parties here, this is what we consider a split – a different sentence between the guideline ranges that were issued and the recommendations by the parties. So there is no clear indication on the record by the court that it would have imposed this same sentence for any other reason other than this issue of whether she was a minimal participant or not. But when the court said assuming that she was, what were we supposed to make of that? The court assumed that she was and then gave an explanation for why her sentence was the upper end of the lower guideline range. Well, we submit that the reasons that it gave do not support that sentence because they are, as I said, mitigating reasons. And, Your Honor, I would like to bring up another point, which is – Are you suggesting that this is a case that your client should have gotten a sentence of no time? Well, the court pushed back against the sentence of no time, sir. He's very clear. He was compared to somebody else. I can't remember who on the record. And he was faced with that issue, and he basically said, no, I'm not going to do that. So he's got discretion. So are you saying it's a substantive error? No, Your Honor. Is that possible and defensible? No, Your Honor. I do believe that it is procedural for the reason that in failing to choose between the guideline ranges, in failing to make the determination of a minimal participant adjustment, there is a reasonable likelihood that it would have gone lower than the sentence that he got. But if there's no procedural error, let's assume we say that, would you still say there's a substantive error? Yes, Your Honor, because as I indicated, let's assume that there was no error, which I submit there was obviously, but let's assume that there was no error and that all the other reasons do not support a sentence at the higher end of the guidelines. And I would bring up the case of Taylor. But if we assume that the court would use the law, then we have to be a case law that says that something within the correct range is presumably reasonable. That's the reader case that says that. So you have a presumption of reasonableness to overcome that. Yes, Your Honor, but we have very contradictory expressions on the court on this record. For example, the memorandum in order denying bail on appeal, which is at the docket 115 below, the court made it yet another calculation on the guidelines at this time, 46 to 57 months, and expressed that it was imposing that sentence. But that's after the fact that that bail on appeal addition has no bearing on the time of sentencing. Once your client's sentenced, she's sentenced no matter what. He can't change the sentence unless there's another statute or there's another rule. Well, I think we ought to show the reasoning, the different reasoning that this court is using to try to push this 46-month sentence as being something that is. So are you going for inadequate explanation as to the reason that it's not, that it's a procedural error? Well, it's part of the harmlessness error, Your Honor, if you say that it failed to choose between. I'm going to have to figure out the error first. I'm sorry, Your Honor? I'm going to have to figure out the error first before we get to the harmlessness. What's the error? Failing to choose between two guideline ranges is an error. But if the court assumes the favorable one and then goes on to give a sentence within that guideline range, I don't understand what the error is. Well, it comes back to the adequacy of the explanation of where within that range to sentence Ms. Rodriguez and the fact that the court seemed to— Is the adequacy of the explanation, that's what I asked, and you said no. I'm sorry, Your Honor. Maybe I misunderstood what you just said. You said the procedural error is the inadequacy of the explanation. Yes, and I believe that is raised on our brief. If you boil it down, what he says is the height of the guideline range, if she were minimal, is 46 months. That will be my sentence. That sentence, 46 months, reflects seriousness of the offense, respect to the law, all the 3553A factors. Other factors I've considered, first-time offender, compliant during pretrial release, she's studying, she's employed, she's had mental health issues. That's why I'm doing this. So, okay, it does seem to me he's saying the top of the guideline range is 46 months, and then he sort of repairs the 3553A factors and then gives them some other factors that are mitigating, so that could be either the error or him just saying why I'm not going to go higher because the offenders here do often go higher than the guidelines. So, how do we make sense of that? That's what he said. So what's wrong with what he said? Again, because the fact that other couriers have not gotten time-served sentences maybe is an argument against time-served sentences, but certainly it's not an argument against. What we were requesting, which was—now we're requesting it, which was that the court here find error because the court, the district court, did not adequately explain why it wasn't holding a higher end of the guideline sentencing. That is something that— So this is the unusual case where the presumptive reasonableness of the guidelines has been overcome by the inadequate explanation for choosing the high end of the guideline. I would agree with that, Your Honor. And it would be difficult to establish why is, other than the presumption itself, what reason on the record that is being challenged here would the court have to go towards a higher end of the guidelines? I mean, we're assuming it's a presumption. The duty to reflect it is on you as the client's time reasonable. Yes, Your Honor. And that's what I believe we have done here, highlighting all the mitigating circumstances that would militate against a higher end sentence, which are unrebutted, and I believe that they should merit a reversal. And I assume he would say, well, it's because there's $300,000 worth of drugs. This was a serious crime. There were 14.66 kilograms of cocaine, which is really dangerous, and we need to deter people from doing this. And so that's aggravating. Here's the mitigating. I come up with a new guideline. That seems like standard fare of a criminal sentence. I wouldn't say that those factors are aggravating, Your Honor. I think all those factors are minimal requirements for Ms. Rodriguez to have led guilty to the offense. The amount, the value of those drugs. I mean, the value of those drugs being $300,000 is not an argument for it being an aggravator. When you compare that with the $6,000 that she was offered as a one-time payment or to perform a task, if anything, that just goes to highlight the— I'm going to have her brother participate. I mean, these are all facts that are in there. Well, Your Honor, again, many of these facts were objected to because they were just proper assertions at the sentence hearing that were unsubstantiated by the record. I didn't see—there's the second person that supposedly was just sent to sort of get her some attention. But the brother, nobody really said that was false. Well, what was indicated is that she offered her brother, that she mentioned her brother to her handler in a conversation when she was receiving instructions. Now, the government is trying to make this out like she recruited him and that he participated in an offense in a future drug smuggling trip, but that never happened. And I think that's clear when it's indicated on the record. So the fact that she may have mentioned him and no other— Well, that's a worse fact than if she hadn't, isn't it? Like, hey, somebody else might be willing to do that. Look, it's worse if it happened, but her role was to put him forward, and that's a fact in here that certainly could go into why the judge thinks deterrence and all those other things required the high-end sentence. Well, Your Honor, that was—I believe that was mentioned in the context of determining whether she was a minimal participant or not. When the court is imposing a sentence, it doesn't mention it as a factor. And again, these are things that were not substantiated when they were objected to. It would be one thing, as I think Your Honor, to be highlighted in a previous case, if these assertions at sentencing went unobjective, right? I think that's what Montalvo-Fergus indicates. But they were heavily litigated and pushed back on at the sentencing. And I think that the court even says at least that's what the government alleges when it's kind of adopting this rationale. And this is precisely the type of dangerous conduct that needs, therefore, there to be evidence presented if the government is going to try to add more information for the court to consider at sentencing when it's being objected to. I mean, the PSR was never objected to in the offense-conduct section. The government never presented any evidence or witnesses during sentencing. And the PSR was never corrected after sentencing to reflect any changes in the information. So this court is left now with proper assertions, unsubstantiated, that were objected to and that now the court relied on to impose a higher end of the guideline range. Presumably, if the court believes that these assertions were not just considered for the minimal participant adjustment but as a whole to determine where in the range to be sentenced. So I wouldn't say that those are improperly considered and shouldn't have to work together. Once you objected, did the court make findings? Was it a finding of reliability? Or did you request a hearing to have the evidence approved? Well, Your Honor, we objected to the information. This was something that… Well, that's not entirely true because after this and back and forth, the defense lawyer says she never made two contacts. That's not correct. She offered her brother. No other measure was taken as to that fact. So there's no dispute. She offered her brother. Yes, as to that fact, yes. But the conclusion that the court reached that she recruited or attempted to recruit others, and I think that she said others, not just one person and not just offering a person. Fundamentally, I think there's a material difference between mentioning a name during a conversation to her handler to recruiting somebody else to partake in a venture. Thank you. Any further questions? Okay, we have a minute for a couple. Let's hear from counsel. Welcome back. Please reintroduce yourself on the record to begin. Good morning, Your Honor. May it please the court, I'm Mariela Pereira for the government. The court should affirm Mr. Rodriguez's sentence because first, as provided in the application, there was no error. And second, the district court issued a reasonable sentence here after considering both aggravating and mitigating factors. And that sentence fell within Rodriguez's own proposed lower guideline range. First, as to the court's guideline calculation, there was no harmless error. The district court here, the sentencing framework calls for the district court to calculate the guideline ranges at the start, recognize the two total offense levelings in question, then calculate the matching guideline ranges, and then determine the other sentencing factors, and found that a 46-month sentence was most appropriate, regardless of the total offense level in question. And not only that, but also in the statement of reasons, the district court did explicitly provide a lower guideline range calculation that included the minimum rule adjustment. But it looks like, to me, the reason that the judge then chose the high-end was just boilerplate language, and then the only case-specific fact were mitigators. How does that support the high-end guideline range? I would point this court to page 106 of the sealed appendix, where the court specifically lists seven factors for why a sentence of time served was not appropriate and a sentence of 46 months was appropriate. The district court notes that her conduct was similar to conducts of other couriers or in other cases where the sentences of time served were not issued. The district court pointed out the amount of drugs in her luggage, their approximate value, which the district court showed that she had some trust in the organization. The district court also pointed out that she had attempted to recruit her brother and a friend, that she had been offered to be paid $6,000 plus expenses, that she had also communicated with other conspirators. And here, the district court had also a discussion with the defense counsel. But other than the potential, and I recognize asking the brother to participate, what about this is aggravating? I mean, it seems pretty clear she doesn't know what's in the suitcase, so it's hard to say that the amount of drugs makes it aggravating. $6,000, given what she's doing, seems like a pretty relatively minor amount of money. She hesitated, but indicated she knew she was carrying something bad. Well, that's the basic thing she needs to say to even plead guilty. So, sure, he lists a bunch of factors, and somehow it's bad, the prepaid card we used to pay for the plane tickets, but I don't understand that either. So, sure, he says things, but they don't really seem very aggravating, except maybe the one about the brother. True, the court discussed this in its reasoning to show why a 46-month sentence and not a time served sentence, which is what Ms. Rodriguez had forecasted for, was most appropriate. And I'll doubt that this is considering that this falls within the guidelines. But we're giving him just the credit now. We're giving him credit, which maybe is dubious, of giving him to say the guideline range was 37 to 46. And now we're asking, well, he chose the 46, so it's not time served to 46. In my mind, why did he choose 46 and not 37? And those facts don't really seem to provide any kind of reason, again, putting the brother one maybe aside. And so what I'm thinking is – and then he says a bunch of mitigating things. So if you really believe the minimal role applied, which is what we're giving him the assumption for, to make it not a legal error, then it's a hard question. Well, then why, Judge, did you go to the high end? And I don't just see how that section really supports that. It goes within the district court's discretion to determine. Subject to our review, though, that's the whole point of this. Correct, but I would submit, again, that these are sufficient aggravating factors to show why the district court thought that the 46-month sentence was most appropriate. The fact that she equivocated, she had him pleaded guilty at the change of media, genuinely and intentionally, possessing the intent to distribute at least five kilograms of cocaine. Then at the interview with the PSR officer, the probation officer, excuse me, she said that she would not have done the offensive. She knew that the drugs were involved, that she thought all along that it was money. And then when she had an interview later on with the government, then she equivocated against, hesitated, and then admitted that she knew it was something, not just money. And the equivocation, the court discussed with the defense counsel also during the sentencing hearing. I don't have it on pages, page 92 of the sealed appendix. And so all of these factors weighed in the district court's mind, and the district court determined that that sentence was the most appropriate. And considering that that fell within the district's own proposed guidelines when she passed, it is presumptively very reasonable. But could it also be he really didn't mean she was minimal in the sense that it factored into his thinking, I never really gave her this, and so I'm coming up somewhere in between, and this is kind of a Solomonic judgment. But that's where the error of not deciding the guideline question comes in. If that's influencing him, well, I kind of – I sort of said I gave it to her, but I didn't really, and so I'm going to come up with something in the middle, which when I read this whole record, I kind of feel like I'm reading. That's kind of the problem, which is he did not definitively commit himself to granting the downward points, which then would have centered what we're talking about, and instead I feel like we're engaged in kind of a vague discussion where he picks a number but unborn from a guideline range, and I think that's what – if there's an error for not having selected the guideline range, that would be what it is. With regard to the sentencing factors, again, the district court had discretion. The district court looked at these factors, the recruitment, the date of location, the amount of money she would have made, and in the district court's mind, the 46-month sentence was the most appropriate. Let me ask a couple. I believe from the record, she admitted that during the safety valve interview, she stated that she had offered two more contracts. Would that be sufficient to give the overhead? Presumably so, Your Honor. Considering that the district court had this evidence before it, the district court explicitly mentioned that yes, it is sufficient to give the higher end because there is something aggravating in that. Yes, Your Honor. Anything else, counsel? Unless Your Honor has any other questions. No, Your Honor. Thank you.  Mr. Soto, you have one minute. Thank you, Your Honor.  I'll be brief. I do believe that the court, during my first term speaking, is operating under the assumption that the district court meant to give a minimal participant adjustment, and then, basing on that, you're trying to determine what the harm is or not. Here, the problem is that the statements by the court during the sentence contradict that and lead to some of the concerns that, not saying that the judge of the day frame is making this conclusion already, but that lead to the concern of whether the judge is imposing a compromise sentence or whether it is actually applying the minimal rule. And that is the reason why we believe that this court erred in not determining a guideline, because it leads to this kind of trying to get into the mind of the judge and thinking, well, if it had applied the minimal rule, then it had made me talk all the other considerations. If it didn't, then it would be presumptively error. But the problem with having the court not starting the sentencing process with determination of that guideline range is that it leaves the court without a meaningful review of the court's reasoning for giving that sentence. Okay. Thank you, counsel. Okay. Let me just, before we call a civil case, this is a note of personal privilege, but I know the chief of the appellate division's attorney is here, office is here, the first assistant for the SPD. I just want to commend both offices for the level of briefing, oral advocacy, definitely preparation. I'm sure you've noted these arguments many times, and you continue to set a very high bar, so just please continue to raise it and bring these excellent arguments from both sides. So thank you. And I speak for myself. And me. Thank you. Let's call the civil case.